**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| In Re: ) | | Chapter 13 |
| ) | | |
| Peter Dimitrius Tollios II and ) | | Case No. 09 B 19329 |
| Judith Mae Tollios, ) | | |
| ) | | |
| Debtors. ) | | Judge Carol A. Doyle |

**MEMORANDUM OPINION**

Peter Dimitrius Tollios II and Judith Mae Tollios, the debtors in this chapter 13 case, filed a motion for sanctions against JP Morgan Chase ("Chase") for allegedly violating Rule 3002.1(b) of the Federal Rules of Bankruptcy Procedure. The debtors contend that Chase violated the rule because Chase sent them a notice of an increase in the escrow payment due under their mortgage loan but did not file a copy of the notice with the court or serve it on their attorney and the chapter 13 trustee. At issue is whether Rule 3002.1 applies to cases in which the plan requires the debtors to make regular monthly payments under their mortgage loan agreement but does not provide for payment of pre-petition arrears to the mortgage creditor.

The court concludes that Rule 3002.1 applies to all chapter 13 cases in which the debtor's plan provides for the maintenance of monthly mortgage payments on the debtor's principal residence, regardless of whether the plan also provides for payment of pre-petition arrears owed to the mortgage creditor. Chase therefore violated Rule 3002.1 by failing to file and properly serve the notice of the increase in the monthly mortgage payment. In the circumstances of this case, however, sanctions under Rule 3002.1(i) are not appropriate.

**I.     Background**

The court confirmed the debtors' chapter 13 plan in September 2009. The plan provided for them to make current monthly mortgage payments directly to the mortgage servicer. The plan did not provide for payment of any mortgage arrears because the debtors were current on their mortage payments when they filed the bankruptcy case.

In December 2011, the debtors' monthly mortgage payment was $1,937.59 in principal and interest and $90.48 for an escrow to cover insurance payments, for a total monthly payment of $2,028.07. The loan agreement provided that the debtors would pay their property taxes directly to the taxing authority, so there was no escrow for taxes. In January 2012, Chase sent the debtors a notice that their monthly payment would increase by approximately $1,200 per month to $3,294.46. The debtors had failed to pay their property taxes so Chase paid them and then increased the monthly escrow payment in accordance with its rights under the loan agreement. Although the debtors received notice of the payment increase, Chase did not file a notice of the increase with the court or serve it on the debtors' counsel or the chapter 13 trustee. The debtors have not paid the increased escrow amount to Chase, and they have acknowledged that they cannot afford to pay the taxes on the property.

In August 2012, the debtors filed the current motion seeking sanctions against Chase for violating Rule 3002.1 by failing to file and serve the notice on debtors' counsel and the trustee. They seek as a sanction a declaration that Chase is estopped to assert any post-petition default under the loan, that they are "current" on their loan payments, and that the escrow payment will be the original amount of $90.28 for the remainder of the term of the loan. The debtors also request an award of their attorneys' fees for bringing the motion and punitive damages of at least $250,000. In effect, the debtors seek a determination that they are not liable for the taxes that

Chase has paid on their behalf, or for any taxes that will be owed in the future, because of Chase's failure to file and properly serve the notice of the increase in the monthly payment.

For the reasons discussed below, the court agrees with the debtors that Rule 3002.1 applies in this case, but the court declines to grant the relief they request.

### II.     Rule 3002.1

Rule 3002.1 was adopted in December 2011 to address a significant problem caused when mortgage companies applied fees and costs to a debtor's mortgage while the debtor was in bankruptcy without giving notice to the debtor and then, based on these post-petition defaults, sought to foreclose upon the debtor's property after the debtor completed the plan. Rule 3002.1 deals with this problem by requiring notice of payment changes and providing an opportunity for the debtor to contest them during the chapter 13 case. The rule provides in part:

> (a) In general. This rule applies in a chapter 13 case to claims that are (1) secured by a security interest in the debtor's principal residence, and (2) provided for under § 1322(b)(5) of the Code in the debtor's plan.
>
> (b) Notice of payment changes. The holder of the claim shall file and serve on the debtor, debtor's counsel, and the trustee a notice of any change in the payment amount, including any change that results from an interest rate or escrow account adjustment, no later than 21 days before a payment in the new amount is due.
>
> . . .
>
> (e) Determination of Fees, Expenses, or Charges. On motion of the debtor or trustee filed within one year after service of the notice under subdivision (c) of this rule, the court shall . . . determine whether payment of any claimed fee, expense or charge is required by the underlying agreement and applicable nonbankruptcy law to cure a default or maintain payments in accordance with section § 1322(b)(5) of the Code.

Fed. R. Bankr. P. 3002.1.

Under subsection (a), the rule applies in chapter 13 cases to claims secured by the debtor's principal residence and provided for under § 1322(b)(5) in the debtor's plan. Section 1322(b)(5) provides that a plan "may . . . provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due." 11 U.S.C. § 1322(b)(5). Thus, when the loan agreement calls for payments that will be due after the date of the final plan payment, a debtor need not pay the secured claim in full during the course of the plan but instead may simply maintain the regular payment schedule through the end of the plan.

In this case, the debtors' payments under the loan agreement will extend beyond the date of the last plan payment. The debtors were therefore permitted under § 1322(b)(5) to continue making regular monthly payments. Paragraph C of the debtors' plan provides that they will make current monthly payments to Chase's predecessor directly to the creditor instead of through a payment from the trustee. This provision of the plan brings Chase's claim within the scope of Rule 3002.1.[1]

---

[1] Some courts have concluded that payments a debtor makes directly to a creditor are "outside the plan" and therefore do not fall within the rule. *E.g., In re Merino*, No. 9:09-bk-22282-FMD, 2012 WL 2891112 (Bankr. M.D. Fla. July 16, 2012). This is incorrect for two reasons. First, any claim that is treated in a plan is "provided for . . . in the debtor's plan" for purposes of Rule 3002.1, whether the debtor pays the creditor directly or the trustee pays the creditor. The model plan in this district allows a debtor to choose whether the debtor or the trustee will be the disbursing agent for monthly mortgage payments. Thus, a mortgage claim is "provided for in the plan" when the debtor makes the payments directly to the creditor. Second, the Advisory Committee Note says that the rule "applies regardless of whether the trustee or the debtor is the disbursing agent for postpetition mortgage payments." The rule was intended to apply when a debtor makes direct mortgage payments to a creditor. Fed. R. Bankr. P. 3002.1 Advisory Committee's Note.

Chase argues that the rule applies only when a debtor's plan provides *both* for payment of current monthly payments *and* payment of pre-petition arrears owed to the creditor. It cites one case that reaches this conclusion and another case that supports it. *See In re Weigel*, 485 B.R. 327 (Bankr. E.D. Va. 2012); *In re Wallett*, No. 11-10801, 2012 WL 4062657 (Bankr. D. Vt. Sept. 14, 2012). Neither case, however, contains any real analysis of the issue. Each simply declares that § 1322(b)(5) applies only when the debtor's plan both maintains current payments and pays pre-petition arrearages.

An examination of how secured claims are treated in chapter 13 shows that this is not correct. Section 1325(a)(5) contains the general provisions that apply to secured claims in chapter 13. It provides that if a secured creditor does not "accept" the plan, the debtor has two options: (1) pay the full allowed amount of the secured claim by making payments over the course of the plan equaling the value of the collateral plus interest, or (2) surrender the collateral to the creditor. 11 U.S.C. § 1325(a)(5)(B), (C).

Section 1322(b), however, contains specific provisions that apply to mortgage claims on the debtor's primary residence. First, § 1322(b)(2) provides a prohibition regarding such claims: it allows the modification of the rights of all secured creditors *other than* those with liens on the debtor's principal residence. 11 U.S.C. § 1322(b)(2). This provision stops debtors from "stripping down" a mortgage claim by paying only the value of the collateral over the course of the plan, as they could otherwise do under § 1325(a)(5)(B) when the residence is worth less than the amount owed on the loan.

Second, § 1322(b)(5) contains a specific grant of authority to debtors with respect to those same mortgage claims on the principal residence and any other claims on which the last payment is due under the contract after the last payment will be paid under the plan. Subsection

-5-

(b)(5) provides that, notwithstanding the prohibition in subsection (b)(2), the debtor's plan may provide for curing any defaults and maintaining payments on any secured or unsecured debt that would otherwise extend beyond the term of the plan.  Because the introductory language of subsection (b) uses the word "may," subsection (b)(5) provides two permissible options to debtors:  curing pre-petition defaults and maintaining current payments.  It does not require debtors to do both in every case.  Section 1322(b)(5) also expressly permits the plan to provide for maintenance of payments on "*any* unsecured or secured claim on which the last payment is due after the date on which the final payments under the plan is due."  11 U.S.C. § 1322(b)(5) (emphasis added).  This phrase permits the continuation of monthly payments on "any" long-term debt, not just long-term debt on which debtors owe pre-petition arrears.  Thus, the language of § 1325(b)(5) makes it clear that debtors may maintain monthly payments regardless of whether they owe pre-petition arrears.  *See In re Cloud*, No. 09-60299, 2013 WL 441543, at *1-2 (Bankr. S.D. Ga. Jan. 31, 2013).

      Section 1322(b)(5) permits debtors to avoid having to comply with the provisions of § 1325(a)(5), which would otherwise require debtors either to pay the full value of the collateral over the course of the plan or surrender the collateral.  *See* 8 Alan N. Resnick & Henry J. Sommer, *Collier on Bankruptcy* ¶ 1322.09[1], 1322-34 (16th ed. 2012) ("[Section 1322(b)(5)] permits the debtor to take advantage of a contract repayment period which is longer than the chapter 13 extension period, which may not exceed five years under any circumstances, and may be essential if the debtor cannot pay the full allowed secured claim over the term of the plan."); *see also In re Chappell*, 984 F.2d 775, 780 (7th Cir. 1993) (discussing the permissibility of choosing either to treat a secured claim as long-term debt under § 1322(b)(5) or paying off the whole secured claim during the life of the plan); *In re Gilbert*, 472 B.R. 126, 134 (Bankr. S.D.

Fla. 2012) (explaining a debtor's choice for payment of long-term debt as being either full payment of the claim during the plan term, under § 1325(a)(5), or an extension of payments beyond the term of the plan under § 1322(b)(5)).  Thus, any plan that pays current monthly payments on a mortgage loan that extends beyond the plan term provides for the mortgage claim under § 1322(b)(5) for purposes of Rule 3002.1(a), regardless of whether there are pre-petition arrears.  *See In re Cloud*, 2013 WL 441543, at *1-2 (disagreeing with *Weigel* and *Wallett* and holding that § 1322(b)(5) encompasses all long-term debt, not just debt on which a pre-petition default is cured through the plan).

The language of Rule 3002.1 itself makes clear that the rule was intended to apply to mortgage claims treated in a plan by continuing monthly mortgage payments when there are no pre-petition arrears.  Subsection (e) provides that the bankruptcy court will determine whether the post-petition charges assessed by the lender are appropriate under the underlying agreement and nonbankruptcy law "to cure a default *or* maintain payments in accordance with § 1322(b)(5) of the Code."  Fed. R. Bankr. P. 3002.1 (emphasis added).  Thus, the rule applies whether the debtor is paying pre-petition arrears *or* maintaining monthly payments, not only when the debtor pays pre-petition arrears.

The rule refers to mortgage claims that are "provided for under § 1322(b)(5) of the Code" to distinguish between debtors who intend to keep the property and must therefore make payments under the loan agreement, and debtors who will surrender the property under § 1325(a)(5)(C).  This distinction makes sense because a debtor who is surrendering the property does not need notice of changes in the monthly payments or post-petition charges.  The claim will be satisfied by giving the creditor the collateral, not by repaying the creditor.

Construing Rule 3002.1 to apply to mortgage claims only when the debtor owes pre-petition arrears makes no sense in light of the requirements of the rule. It deals solely with *post-petition* changes to the monthly payment and *post-petition* charges the lender imposes under the loan agreement. The lender must file the notice with the court and serve it on the debtor, debtor's counsel, and the chapter 13 trustee so that all relevant parties are aware of the additional amounts owed and can deal with them while the bankruptcy case is pending. The rule has no impact on pre-petition arrears; the amount owed is determined solely as of the petition date. Nothing that occurs post-petition will change this amount. Thus, there is no rational basis for applying the rule only to debtors who must cure a pre-petition default to the creditor.

At the same time, there is a compelling reason for applying the rule both to debtors who owe pre-petition arrears and those who do not. Both types of debtors have an equal need to know of post-petition changes in the monthly payment and charges imposed by lenders so they can be fully current on their mortgages when they complete the plan. Limiting the rule to debtors who owe pre-petition arrears would deprive any debtor who does not owe pre-petition arrears of information vital to his emergence from bankruptcy with a current mortgage. The text of the rule and the operation of §§ 1322(b)(5) and 1325(a)(5) support the conclusion that the rule applies when the plan provides for maintaining current mortgage payments on the debtor's principal residence regardless of whether the debtor was behind on payments to the lender on the petition date.

### III.   Sanctions

Chase violated Rule 3002.1 by failing to file the notice of escrow increase with the court and serve it on the debtors' attorney and the trustee. The debtors seek as a sanction a declaration

that they need never repay Chase for the property taxes Chase paid on their behalf and that they will never have to pay taxes on the property in the future for the entire loan period. They also seek attorneys' fees and punitive damages.

Subsection (i) of the rule addresses the potential consequences of a failure to comply. It states:

> (i) Failure to Notify. If the holder of a claim fails to provide any information as required by subdividison (b) . . . of this rule, the court may, after notice and hearing, take either or both of the following actions:
>
> > (1)    preclude the holder from presenting the omitted information in any form, as evidence in any contested mater or adversary proceeding in the case, unless the court determines that the failure was substantially justified or is harmless; or
> >
> > (2)    award other appropriate relief, including reasonable expenses and attorney's fees caused by the failure.

Fed. R. Bankr. P. 3002.1(i). The debtors never attempt to fit the relief sought regarding their tax liability into the potential remedies available under subsection (i).

Under subsection (i)(1), the court may exclude evidence of the notice at a hearing on any contested matter or adversary proceeding in which the post-petition increase in payment is at issue. In this case, however, Chase has not yet sought any relief based on the debtors' failure to pay the increased escrow amount, so there is no evidentiary hearing on the horizon at which evidence of the notice by Chase could be excluded.

If Chase seeks such relief in the future, the court will not preclude Chase from presenting evidence of the notice given to the debtors. As noted above, there is a split in authority regarding the applicability of Rule 3002.1 to claims of mortgage lenders when the debtors owe no pre-petition arrears. In addition, this sanction is not appropriate in this case because Chase's failure to file the notice and serve it on debtors' counsel and the trustee did not harm the debtors.

that they need never repay Chase for the property taxes Chase paid on their behalf and that they will never have to pay taxes on the property in the future for the entire loan period. They also seek attorneys' fees and punitive damages.

Subsection (i) of the rule addresses the potential consequences of a failure to comply. It states:

> (i) Failure to Notify. If the holder of a claim fails to provide any information as required by subdividison (b) . . . of this rule, the court may, after notice and hearing, take either or both of the following actions:
>
> > (1)    preclude the holder from presenting the omitted information in any form, as evidence in any contested mater or adversary proceeding in the case, unless the court determines that the failure was substantially justified or is harmless; or
> >
> > (2)    award other appropriate relief, including reasonable expenses and attorney's fees caused by the failure.

Fed. R. Bankr. P. 3002.1(i). The debtors never attempt to fit the relief sought regarding their tax liability into the potential remedies available under subsection (i).

Under subsection (i)(1), the court may exclude evidence of the notice at a hearing on any contested matter or adversary proceeding in which the post-petition increase in payment is at issue. In this case, however, Chase has not yet sought any relief based on the debtors' failure to pay the increased escrow amount, so there is no evidentiary hearing on the horizon at which evidence of the notice by Chase could be excluded.

If Chase seeks such relief in the future, the court will not preclude Chase from presenting evidence of the notice given to the debtors. As noted above, there is a split in authority regarding the applicability of Rule 3002.1 to claims of mortgage lenders when the debtors owe no pre-petition arrears. In addition, this sanction is not appropriate in this case because Chase's failure to file the notice and serve it on debtors' counsel and the trustee did not harm the debtors.

The debtors knew they had to pay the taxes directly to the taxing authority, that they did not pay the taxes, that Chase paid the taxes on their behalf, and that this payment entitled Chase to increase the amount of the escrow payment to cover the taxes it paid as well as future taxes. The debtors received notice from Chase of the inevitable increase in the escrow amount. The plan required the debtors, not the trustee, to make direct payments to Chase so the failure to notify the trustee of the escrow increase had no impact on the debtors' case. As the debtors admit in their motion, they are unable to pay both the mortgage payment and the taxes on the property; that is why they failed to make the tax payment themselves and failed to make the increased escrow payments to Chase. Given that the debtors suffered no harm from Chase's noncompliance with the rule, the court will not bar Chase from presenting evidence of the notice served on the debtors at any future hearing on this issue.

Subsection (i)(2) of the rule allows the court to "award other appropriate relief, including reasonable expensese and attorneys' fees." The debtors did not attempt to explain why eliminating their contractual obligation to pay property taxes would be "other appropriate relief" for Chase's failure to comply with the rule. While subsection (i)(2) may allow courts to fashion a remedy other than the exclusion of evidence and the award of attorneys' fees and expenses, nothing in the rule suggests that such a drastic remedy would ever be appropriate, let alone when the debtors suffered no harm from the violation of the rule. The requested declaration absolving the debtors of their contractual obligation to pay property taxes for the entire term of the loan bears no rational relationship to Chase's violation of the rule and would give the debtors a windfall for a technical violation that caused them no harm. The request is denied.

The debtors also seek an award of attorneys' fees. Although the primary relief sought by the debtors - eliminating their obligation to pay taxes - is frivolous, the motion raised a

significant question regarding the applicability of Rule 3002.1. Chase violated the rule and the court potentially could have ruled in the debtors' favor by excluding evidence of the notice of the escrow increase at any future evidentiary hearing so the motion was not entirely frivolous. The court will therefore consider an award of attorneys' fees to the debtor. Debtors' counsel agreed to provide services in this case for a flat fee. The court will give debtors' counsel an opportunity to present a request for attorneys' fees with an itemization of the time spent and an explanation of why an award of attorneys' fees would be appropriate in light of the flat fee agreement.

### IV. Conclusion

For all of the reasons discussed above, the court denies the motion with respect to all sanctions sought except that the court will consider whether an award of attorneys' fees is appropriate. The debtors are granted 10 days to file a request for attorneys' fees with an itemization of time for any fees sought and an explanation of why an award of attorneys' fees is appropriate in light of the flat fee agreement.

Dated:    May 13, 2013

ENTERED:

_____
Carol A. Doyle
United States Bankruptcy Judge